## Willey v. Kaiser et ux.

*Pearce H. E. Aul*, for plaintiff.
*Eastburn, Begley & Fullam*, for defendants.

SATTERTHWAITE, J., January 12, 1953.—The preliminary objections filed by defendants to plaintiff's complaint raise a question of construction of the Fictitious Names Act of May 24, 1945, P. L. 967, 54 PS §28.1 et seq. Where two persons have registered a fictitious name under section 1 of the act, and one of such persons dies, and subsequent thereto the other, trading under the fictitious name, enters into a contract, may suit be brought on such contract by the survivor notwithstanding that section 7 of the act relating to the withdrawal of the name of the deceased party is not complied with until after such action has been commenced?

On July 11, 1952, plaintiff, Virgil W. Willey, filed his complaint in this action claiming real estate broker's commissions from defendants for the sale of their property. Attached as an exhibit to the complaint is a copy of the agreement of sale, dated March 1, 1952, by a clause in which defendants allegedly agreed to pay to William T. Wright Co. the commissions in suit. Plaintiff alleged that he was doing business as The William T. Wright Company at the time he procured this contract for defendants. On July 25, 1952, preliminary objections to the complaint were filed, alleging that, as of that date and also as of the time the contract in question was signed, the registration in the office of the prothonotary of Bucks County under the Fictitious Names Act for the name "The William T. Wright Company" showed Virgil W. Willey, Sr., and R. Clifford Sherman as the persons interested in the business, and contending that the complaint was deficient in that R. Clifford Sherman was a necessary party thereto and had not joined therein. Subsequently, a stipulation was filed agreeing that R. Clifford Sherman died on June 9, 1951; that on June 26, 1952, a certificate of withdrawal of the name of R. Clifford Sherman was issued with respect to the fictitious name in question by the Secretary of the Commonwealth of Pennsylvania; and that on July 30, 1952, a statement of the withdrawal of the name of R. Clifford Sherman was filed with the Prothonotary of Bucks County.

At the argument counsel agreed that the matter should be treated as though the preliminary objections had raised the question of the capacity of plaintiff to institute this suit at the time he did. Defendants contended that the failure of Mr. Willey to have the name of R. Clifford Sherman withdrawn prior to his commencement of this action was a violation of the Fictitious Names Act and, therefore, under section 4

thereof, he was precluded from bringing suit until he had complied with the act. Although we have found no authorities on the question, we believe that there is no merit to defendants' highly technical position. It was frankly conceded at the argument that if plaintiff now paid the license fee or fine of $25 and the costs of this case as provided by section 4 of the act, he would be free to commence a new suit, the within question having no relationship to the merits of the cause of action whatsoever.

At the outset, it should be noted that defendants may properly raise the question by preliminary objections: Pa. R. C. P. 1017(*b*) (5) ; Alleman v. Lowengart et al., 63 D. & C. 430; Marks et al. v. McConnell, 68 D. & C. 322; Pottsville Showcase Company v. Pryzblick, 46 Schuyl. 174.

The simple answer to defendants' position on the merits, however, is that plaintiff has not failed to comply with the act under the agreed facts. The only noncompliance was by the representatives of Mr. Sherman. No question of the original registration by plaintiff as one of the parties trading under the assumed name has been raised; plaintiff has done all the law required him personally to do. The withdrawal of Mr. Sherman's name was a matter for the attention of his personal representatives in which plaintiff individually was under no legal compulsion to participate. Sections 7 and 8 of the Act of May 24, 1945, P. L. 967, 54 PS §28.7 and 28.8, relating to withdrawals, provide, inter alia, as follows:

"Section 7. Any person or persons . . . [having registered an assumed name] . . . shall . . . upon *his* or *their* withdrawal from such business, file a statement of . . . withdrawal . . . and shall thereupon have the right to require the Secretary of the Commonwealth and the prothonotary . . . to make a notation on the margin of the book in which such applica-

tion was entered to the effect that *he* or *they* are no longer connected with or interested in such business. . . .

"Section 8. The statements of . . . withdrawal required to be filed by this act shall be under oath signed by *such person or persons* and shall set forth . . . that *such person or persons* (giving the name or names and addresses) have withdrawn therefrom . . . or that the *person or persons desiring the notation* or the entry or recording to be made *are no longer connected with or interested in the business*, the date when such . . . *person or persons withdrew* therefrom, and a request . . . that the notation, or entry or recording, as aforesaid, be made . . .". (Italics supplied.)

In other words, the act requires the withdrawing party (or his representative if he be unable to do so) to file his statement, thereby giving the withdrawing party the right to have his withdrawal noted on the public record, and enabling him to avoid continuing liability by estoppel under the principle of such cases as Lumber and Millwork Co. of Philadelphia v. Bianchi, et al., 14 D. & C. 261 and The Glidden Company v. Wyoming Aviation & Sales Co. et al., 75 D. & C. 361. Whether or not any other person (such as a remaining coregistrant) *might* have the privilege of filing such statement in order to clear the record, we need not now decide; it is sufficient for purposes of this case that we believe he is under no legal *duty* to do so.

This construction of the act, even if there be any doubt about the meaning of the words used as above quoted, seems justified for several reasons. In the first place, this legislation is penal in nature and must therefore be strictly construed: Section 58 (1) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558; Hughes and Dier v. McClure, 77 Pa. Superior Ct. 325; Risser v. Mellott et al., 45 D. & C. 432. See also the strict interpretation of the

prior act given by the Supreme Court in Lamb v. Condon et al., 276 Pa. 544.

This principle of strict statutory construction is especially applicable to the provisions of section 4 of the Act of 1945 in view of certain indefinite and ambiguous language used therein considered in the context of the whole act. This section is taken verbatim (except for the substitution of the word "application" for the word "certificate") from the proviso contained in the second paragraph of section 1 of the original Act of June 28, 1917, P. L. 645, as added by the Act of May 10, 1921, P. L. 465. That legislation related only to original registration of the fictitious name; the Act of 1917, as amended, made no provision whatsoever for the withdrawal or cancellation of such registration. Statutory authorization for the latter was set up by the totally independent Act of June 20, 1919, P. L. 542, which contained no such penalty provision. The Act of 1919 was carried over almost word for word into sections 7 and 8 of the Act of 1945. Prior to the Act of 1945, therefore, it seems clear that the penalty provisions of the Act of 1921, precluding suit if the name not be originally registered, had no application to prevent suit where a name had not been withdrawn from such registration under the distinctly seperate Act of 1919. We believe that it is at least doubtful that the legislature, in 1945, by combining the two separate statutes into the one act, intended that such penalty provisions mechanically copied from the Act of 1921 should apply to the whole combined legislation. Our doubt in this respect is not lessened by the use, in the Act of 1945, of the word "aforesaid" in the first part of section 4 in reference to the effect of the failure to file applications, apparently meaning applications for original registration required by sections 1 and 2 thereof. Can this be construed to refer to applications for withdrawal which are provided for *thereafter* in sections 7

and 8 of the act? Again, the later part of section 4 refers to applications "provided for in this section." However, a close perusal of section 4 discloses no matters provided for therein relating to applications. On the whole, therefore, we cannot state with certainty that the legislature intended section 4 of the Act of 1945 to mean anything more than the identical words meant in the Act of 1921. If it did not apply to withdrawals under the earlier act of assembly, we are not convinced that the same language was intended to have any different effect in the Act of 1945.

This construction of the act will not interfere with the objects thereof. While it must be conceded that the purpose of such legislation is to establish definitely the identity of the individuals owning or interested in the business for the information of those who might have dealings therewith, nevertheless, such purpose can have no relevancy in such a situation as is presented by this record. No question of extension of credit by defendants to the firm known as The William T. Wright Company is here involved; the fact that the record showed two persons as trading under the name has no bearing whatsoever on the merits of the case, and defendants could have been in no way deceived to their prejudice by the failure to have Mr. Sherman's name withdrawn prior to their dealings with plaintiff.

In the view we take of the case, therefore, section 4 of the Act of 1945 has no application; plaintiff cannot be held to have failed to comply with the act under the circumstances. The preliminary objections raising this question must therefore be dismissed and overruled.

The second question raised by the preliminary objections filed was conceded at the argument to depend upon facts not appearing on the present record. It therefore is not properly before the court for consideration at this time.

And now, January 12, 1953, the within preliminary objections are overruled and dismissed and defendants are given leave to file an answer to plaintiff's complaint within 20 days from this date.